# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN FREAS, JR.,<br><br>                        Plaintiff,<br><br>v.<br><br>BMW OF NORTH AMERICA, LLC, a Delaware corporation,<br><br>                        Defendant. | Case No.: 3:17-cv-01761-H-AGS<br><br>**ORDER DENYING MOTION FOR SUMMARY JUDGMENT**<br><br>[Doc. No. 33] |

On May 25, 2018, Defendant BMW of North America, LLC ("BMW") filed a motion for summary judgment. (Doc. No. 33.) Plaintiff Alan Freas, Jr. ("Freas") opposed the motion on July 16, 2018, (Doc. No. 49), and BMW filed a reply on July 23, 2018. (Doc. No. 50.) The Court held a hearing on the matter on August 1, 2018. Timothy Whelan appeared for Freas, while Michael J. Hurvitz appeared for BMW. For the reasons that follow, the Court denies the motion.

## Background

### I. Factual History

Freas is a San Diego area resident. (Doc. No. 1-3, Complaint, at ¶ 1.) BMW is the North American subsidiary of a major international luxury car manufacturer, and does

1

3:17-cv-01761-H-AGS

business in Las Vegas, Nevada, among other places. (Doc. No. 33-1, Defendant's Statement of Facts, at ¶ 1.) On March 12, 2014, when Freas was living in Nevada,[1] he purchased a certified used 2011 BMW 740i ("the Vehicle") from BMW for a total financed price of $61,624.11. (Doc. No. 49-2, Plaintiff's Statement of Facts, at ¶ 1.)

Freas alleges that "since the sale, the car has been plagued by ongoing defects, including problems with the brakes, HVAC system, electrical system, and engine." (Id. at ¶ 3.) The Vehicle's chief defect is "an ongoing engine performance problem," whereby the Vehicle experiences "a loss of power and the illumination of the check engine light" during use, and cannot travel faster than "40 miles per hour or so." (Id. at ¶ 4.) Freas submitted the Vehicle for servicing eight times at BMW locations in Las Vegas from 2014 to 2016, and an additional three times at BMW locations in Southern California from 2016 to 2017. (Doc. No. 33, MSJ, at 3–4.) The Vehicle has been out of service for more than sixty cumulative days since its purchase. (Doc. No. 49-2 at ¶ 3.)

## II. Procedural History

Freas filed suit in the San Diego County Superior Court on August 1, 2017, asserting claims for breach of warranty under California's Song-Beverly Consumer Warranty Act, Civil Code § 1790 et seq., and the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq. (Doc. No. 1-3.) BMW removed that lawsuit to this District on August 31, 2017, and answered the complaint.[2] (Doc. Nos. 1, 2.) The Court dismissed Freas' Song-

---

[1] Freas apparently lived in Las Vegas, Nevada until sometime in the fall of 2016, when he moved to San Diego. (Doc. No. 33-1 at ¶ 4.)

[2] In its notice of removal, BMW asserts that the Court possesses both diversity jurisdiction and original jurisdiction under the Magnuson-Moss Warranty Act. (Doc. No. 1 at ¶¶ 3, 4.) Because the complaint is silent as to the value of the Vehicle and the amount of damages sought, the Court ordered the parties to submit supplemental briefing addressing whether the amount in controversy in this suit is at least $50,000, as required by Magnuson-Moss, see 15 U.S.C. § 2310(d)(1)(B), (3)(B), and $75,000, as required by the federal diversity statute, see 28 U.S.C. § 1332(a)(1), (b). (Doc. No. 19.) The parties' submissions make clear that Freas is seeking to recover at least the approximately $61,000 he paid for the Vehicle, and thus the Court concludes that subject matter jurisdiction exists under Magnuson-Moss. The Court takes no position as to whether diversity jurisdiction also exists.

Beverly claim pursuant to a joint stipulation by the parties on October 3, 2017, leaving only his Magnuson-Moss claim. (Doc. No. 8.)

BMW filed the instant summary judgment motion against Freas' Magnuson-Moss claim on May 25, 2018. (Doc. No. 33.) The matter has been fully briefed and heard, and is now ripe for decision.[3]

**Discussion**

**I.      Legal Standards for Summary Judgment**

Summary judgment is appropriate under Federal Rule of Civil Procedure 56 if the moving party demonstrates that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt., Inc., 618 F.3d 1025, 1031 (9th Cir. 2010). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Fortune Dynamic, 618 F.3d at 1031 (internal quotation marks and citations omitted); accord Anderson, 477 U.S. at 248. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987).

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to establish an essential element of the nonmoving party's case that

---

[3] The Court grants BMW's unopposed request for judicial notice of the alternative dispute resolution program it maintains in California. (Doc. No. 33-2.) The Court sustains Freas' evidentiary objections where valid, and otherwise overrules them. (Doc. Nos. 48, 49-3, 49-4.) The Court reminds the parties that any evidence they seek to introduce at trial must be admissible under the Federal Rules of Evidence, regardless of whether the Court has adverted to such evidence in this Order.

the nonmoving party bears the burden of proving at trial. Id. at 322–23; Jones v. Williams, 791 F.3d 1023, 1030 (9th Cir. 2015). Once the moving party establishes the absence of a genuine issue of material fact, the burden shifts to the nonmoving party to "set forth, by affidavit or as otherwise provided in Rule 56, 'specific facts showing that there is a genuine issue for trial.'" T.W. Elec. Serv., 809 F.2d at 630 (quoting former Fed. R. Civ. P. 56(e)); accord Horphag Research Ltd. v. Garcia, 475 F.3d 1029, 1035 (9th Cir. 2007). To carry this burden, the non-moving party "may not rest upon mere allegation or denials of his pleadings." Anderson, 477 U.S. at 256; see also Behrens v. Pelletier, 516 U.S. 299, 309 (1996) ("On summary judgment, . . . the plaintiff can no longer rest on the pleadings."). Rather, the nonmoving party "must present affirmative evidence . . . from which a jury might return a verdict in his favor." Anderson, 477 U.S. at 256. Questions of law are well-suited to disposition via summary judgment. See, e.g., Pulte Home Corp. v. Am. Safety Indem. Co., 264 F. Supp. 3d 1073, 1077 (S.D. Cal. 2017).

When ruling on a summary judgment motion, the Court must view the facts and draw all reasonable inferences in the light most favorable to the non-moving party. Scott v. Harris, 550 U.S. 372, 378 (2007). The court should not weigh the evidence or make credibility determinations. See Anderson, 477 U.S. at 255. "The evidence of the non-movant is to be believed." Id. Further, the Court may consider other materials in the record not cited to by the parties, but it is not required to do so. See Fed. R. Civ. P. 56(c)(3); Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010).

**II.  Analysis**

BMW argues that: (i) Nevada law governs Freas' Magnuson-Moss claim; (ii) this lawsuit should be dismissed because Freas did not engage in an informal dispute settlement process prior to filing suit; (iii) Freas cannot recover for any breach of a written warranty because Nevada law precludes relief for used car purchasers, and his claims are otherwise time barred; and (iv) Plaintiff lacks sufficient evidence to create a triable fact issue as to whether the Vehicle was defective at the time of sale. (Doc. No. 33.) Freas disputes each of BMW's legal arguments, and asserts that his lay testimony combined with the large

number of unsuccessful service attempts could convince a trier of fact that BMW breached express and implied warranties by delivering him a defective vehicle. (Doc. No. 49.)

As explained below, the Court agrees with BMW that Nevada law controls Freas' Magnuson-Moss claim. However, the Court concludes that: (i) Freas was not required to engage in an informal dispute settlement process before filing this suit; (ii) Freas' express warranty theory is not barred by any provision of Nevada's Lemon Law; and (iii) there are genuine issues of material fact as to whether BMW breached the implied warranty of merchantability created by Nevada's Uniform Commercial Code. The Court accordingly declines to enter summary judgment for BMW.

### A. Choice of Law

Freas' sole claim is that BMW violated the federal Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 et seq., by breaching written and implied warranties created at the time the Vehicle was sold. As the Ninth Circuit has explained, "the Magnuson-Moss Warranty Act creates a private cause of action for a warrantor's failure to comply with the terms of a . . . warranty." Milicevic v. Fletcher Jones Imports, Ltd., 402 F.3d 912, 918 (9th Cir. 2005); see also 15 U.S.C. § 2310(d)(1) (A "consumer who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty, implied warranty, or service contract" may bring suit in federal court.). However, except "in the specific instances in which Magnuson-Moss expressly prescribes a regulating rule, the Act calls for the application of state written and implied warranty law, not the creation of additional federal law." Milicevic, 402 F.3d at 918 (quoting Walsh v. Ford Motor Co., 807 F.2d 1000, 1012 (D.C. Cir. 1986)); accord Brown v. Electrolux Home Prods., Inc., 817 F.3d 1225, 1231 (11th Cir. 2016); Carlson v. Gen. Motors Corp., 883 F.2d 287, 291 (4th Cir. 1989). Thus, in order to recover under Magnuson-Moss, Freas must show a violation of an express or implied warranty created and governed by state law. See, e.g., Birdsong v. Apple, Inc., 590 F.3d 955, 958 n.2 (9th Cir. 2009) ("Under [Magnuson-Moss], the court applies state warranty law."); Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 &

n.3 (9th Cir. 2008) (holding that "claims under the Magnuson-Moss Act stand or fall with [a plaintiff's] express and implied warranty claims under state law").

The parties dispute which state's law governs the warranties underlying Freas' Magnuson-Moss claim. BMW argues that the Court should apply Nevada law. (Doc. No. 33 at 6–12.) Freas does not take a definitive position as to which state's law should apply in his summary judgment briefing, although he argued for California law earlier in this litigation. (Doc. No. 16 at 18.)

The Court agrees with BMW. Federal courts exercising jurisdiction under the Magnuson-Moss Warranty Act apply the forum state's choice of law rules when selecting which state's warranty laws govern the plaintiff's claims. See, e.g., David v. Am. Suzuki Motor Corp., 629 F. Supp. 2d 1309, 1315 (S.D. Fla. 2009); Feinstein v. Firestone Tire & Rubber Co., 535 F. Supp. 595, 606 (S.D.N.Y. 1982) ("[T]his federal court sitting in New York is required, either under Magnuson-Moss jurisdiction or diversity jurisdiction, to look to New York choice-of-law rules."). Under California law, a claim for breach of express or implied warranties "necessarily sounds in contract." Wyatt v. Cadillac Motor Car Division, 145 Cal. App. 2d 423, 426 (1956), abrogated on other grounds by Sabella v. Wisler, 59 Cal. 2d 21, 29 (1963); see also Hauter v. Zogarts, 14 Cal. 3d 104, 117 (1975). The Court must therefore apply Civil Code § 1646 in determining whether Nevada or California warranty law governs this case.[4] See Frontier Oil Corp. v. RLI Ins. Co., 153 Cal. App. 4th 1436, 1454–60 (2007) (holding that Civil Code § 1646 supplies the correct choice of law rule for contract issues); accord Alkayali v. den Hoed, No. 3:18-cv-777-H-JMA, 2018 WL 3425980, at *4 (S.D. Cal. July 16, 2018) (Huff, J.).

Under Civil Code § 1646, a "contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of

---

[4] In this context, a warranty is an "express or implied promise that something in furtherance of the contract is guaranteed by one of the contracting parties; esp[ecially], a seller's promise that the thing being sold is as represented or promised." Black's Law Dictionary (10th ed. 2014). Thus, although a warranty is not always a contract per se, it is inextricably linked to contract rights and interpretation, and is properly subject to contractual choice of law rules.

6

performance, according to the law and usage of the place where it is made." Here, the sales contract that gave rise to the express and implied warranties at issue was made in Nevada, where Freas purchased, first used, and primarily serviced the Vehicle. The Court accordingly concludes that all warranties relevant to Freas' Magnuson-Moss claim arise under and are governed by Nevada law.[5]

### B. Informal Dispute Settlement Procedure

The Magnuson-Moss Warranty Act provides that if a warrantor establishes "an informal dispute settlement procedure which meets the requirements of the [Federal Trade] Commission's rules" and "he incorporates in a written warranty a requirement that the consumer resort to such procedure before pursuing any legal remedy under this section respecting such warranty, then (i) the consumer may not commence a civil action . . . under . . . [the Act] unless he initially resorts to such procedure[.]" 15 U.S.C. § 2310(a)(3). BMW maintains an informal dispute settlement procedure (the Better Business Bureau's AUTO LINE program) in Arkansas, California, Georgia, Idaho, Iowa, Kentucky, Maryland, Massachusetts, Minnesota, Pennsylvania, Ohio, and Virginia. (Doc. No. 49, Exh. 1, PageID 677.) BMW argues that the Court should dismiss this suit because Freas did not resort to the AUTO LINE program in California before filing. (Doc. No. 33 at 17–18.) Freas counters that he was not required to use AUTO LINE because BMW failed to provide proper notice of the program in its warranty booklet. (Doc. No. 49 at 15–19.)

The Court rejects BMW's position for two reasons. First, BMW failed to comply with the Federal Trade Commission's regulations in seeking to require Freas to make use

---

[5] The Court notes that it would reach the same result if it applied § 191 of the Second Restatement of Conflict of Laws, as urged by BMW, or California's governmental interest test. See Arno v. Club Med. Inc., 22 F.3d 1464, 1467 (9th Cir. 1994) (describing the governmental interest test). Assuming that there are relevant differences between California and Nevada law in this area, Nevada has a much more significant relationship to this dispute, and its laws would be more greatly impaired if they were not applied. The Vehicle was sold in Nevada to a then-Nevada-resident, and was serviced eight times in Nevada as compared to only three in California. The most significant connection that California has to this dispute is that Freas is now a California resident, a fact that is relatively inconsequential when compared to this suit's greater contacts with Nevada.

of the AUTO LINE program. Federal law provides that a "warrantor shall disclose clearly and conspicuously at least the following information on the face of the written warranty:"

> (1) A statement of the availability of the informal dispute settlement mechanism;
>
> (2) The name and address of the Mechanism, or the name and a telephone number of the Mechanism which consumers may use without charge;
>
> (3) A statement of any requirement that the consumer resort to the Mechanism before exercising rights or seeking remedies created by Title I of the [Magnuson-Moss Warranty] Act; together with the disclosure that if a consumer chooses to seek redress by pursuing rights and remedies not created by Title I of the Act, resort to the Mechanism would not be required by any provision of the Act; and
>
> (4) A statement, if applicable, indicating where further information on the Mechanism can be found in materials accompanying the product, as provided in § 703.2(c) of this section.

16 C.F.R. § 703.2(b). "If the warranty is included as part of a longer document, such as a use and care manual," the phrase "[o]n the face of the warranty" means "the page in such document on which the warranty text begins." Id. § 703.1(h)(2).

Here, it is undisputed that BMW's written warranty begins on page 26 of its 2011 7 Series Service and Warranty Information Booklet. (Doc. No. 33-1 at ¶ 11.) It is likewise undisputed that page 26 contains none of the information required by 16 C.F.R. § 703.2(b); rather, that information is provided on page 22 of the booklet. (Id. at ¶ 10.) Because BMW failed to provide the information required by 16 C.F.R. § 703.2(b) "on the face of the written warranty," as defined by federal law, Freas was not required to use AUTO LINE before filing this suit.

BMW asks the Court to excuse its technical noncompliance with the FTC's regulations and asserts that there "is no authority to support [Freas'] draconian interpretation of [16 C.F.R. § 703.2(b)'s] disclosure requirements." (Doc. No. 33 at 18.) However, Magnuson-Moss itself expressly provides that a consumer is only required to

pursue an informal dispute settlement procedure prior to filing suit if "such procedure, <u>and its implementation</u>, meets the requirements of [the FTC's] rules[.]" 15 U.S.C. § 2310(a)(3)(B) (emphasis added); <u>see also</u> <u>id.</u> § 2310(a)(2) (giving the FTC the authority to "prescribe rules setting forth minimum requirements for any informal dispute settlement procedure which is incorporated into the terms of a written warranty"). Because Congress has conditioned the informal dispute settlement requirement on the warrantor's compliance with FTC rules, it would be inappropriate for the Court to excuse BMW's failure to fully adhere to 16 C.F.R. § 703.2(b). <u>See, e.g.</u>, <u>Henson v. Santander Consumer USA Inc.</u>, 137 S. Ct. 1718, 1725 (2017) ("[I]t is [the courts'] job to apply faithfully the law Congress has written[.]"). Moreover, as the Third Circuit has explained, "the FTC regulations promulgated to guide providers of alternative dispute resolution mechanisms are slanted toward the consumer: consumers must comply with only minimal requirements, while the warrantors must follow more elaborate and more burdensome rules[.]" <u>Harrison v. Nissan Motor Corp. in U.S.A.</u>, 111 F.3d 343, 351 (3d Cir. 1997). Requiring technical compliance with the FTC's disclosure requirements makes practical sense; as the FTC put it, alternative dispute resolution procedures are only "useful if consumers realize they exist." F.T.C. Statement of Basis and Purpose for 16 C.F.R. § 703, 40 Fed. Reg. 60,190, 60,194 (1975) (footnote omitted).

Second, Freas was not required to make use of the AUTO LINE program prior to filing suit because the program does not exist in Nevada, where Freas purchased the Vehicle. (Doc. No. 49-1, Romano Decl., ¶ 22; <u>see also</u> Doc. No. 49 at PageID 677.) Although neither Magnuson-Moss nor the FTC's regulations address the scenario before the Court—Freas purchased the Vehicle in a state where BMW does not maintain a qualified informal dispute settlement procedure (Nevada), but then subsequently moved to a state where BMW does maintain such a procedure (California)—dismissing Freas' suit would make little sense. The express purpose of the informal dispute settlement requirement is "to encourage <u>warrantors</u> to establish procedures whereby consumer disputes are fairly and expeditiously settled through informal dispute resolution

9

mechanisms." 15 U.S.C. § 2310(a)(1) (emphasis added). This Congressional policy would not be furthered by allowing BMW to benefit from the sheer accident that Freas moved to an AUTO LINE state after purchasing the Vehicle, when BMW itself elected not to establish a similar dispute resolution mechanism in Nevada.

The Court accordingly declines to stay or dismiss this lawsuit and order Freas to use the AUTO LINE procedure, which would be non-binding in any event. See 16 C.F.R. § 703.5(j) ("Decisions of the [informal dispute settlement procedure] shall not be legally binding on any person."); Cunningham v. Fleetwood Homes of Ga., Inc., 253 F.3d 611, 618 (11th Cir. 2001) (The "informal dispute settlement procedure of § 2310(a)(3) is a non-binding mechanism, in that it serves at most as a prerequisite, and not a bar, to relief in court.").

### C. Express Warranty Theory

BMW argues that Freas' breach of express warranty theory fails as a matter of law because: (i) the remedies provided by Nevada's Lemon Law, Nev. Rev. Stat. § 597.600 et seq., are available only to purchasers of new cars, and thus Freas has no remedy as a user car purchaser; and (ii) the Lemon Law's statute of limitations, Nev. Rev. Stat. § 597.650, bars Freas' claim. (Doc. No. 33 at 12–14.) The Court rejects both arguments.

As an initial matter, BMW is correct that the Nevada Lemon Law only regulates warranties arising from the sale of new vehicles. See Nev. Dep't of Taxation v. Chrysler Group LLC, 300 P.3d 713, 716 (Nev. 2013) ("We . . . note that the legislative intent behind Nevada's lemon law was to protect buyers who purchased defective new vehicles."). But it does not then follow that purchasers of used vehicles have no remedies at all if the seller breaches an express warranty. Nothing in the statute states that the Lemon Law provides the sole and exclusive remedies for all car purchasers in Nevada, or purports to pre-empt, for example, the remedies available under Nevada's Uniform Commercial Code for purchasers of defective goods. See Nev. Rev. Stat. § 104.2601. In fact, the statute says just the opposite: "The provisions of [the Lemon Law] do not limit any other right or

10

3:17-cv-01761-H-AGS

remedy which the buyer may have by law or by agreement." Nev. Rev. Stat. § 597.670. The better way to read the Lemon Law—and the interpretation most faithful to its status as "a remedial statute that should be read broadly in favor of the consumers the law was designed to protect," Milicevic v. Mercedes-Benz USA, LLC, 256 F. Supp. 2d 1168, 1175 (D. Nev. 2003), aff'd 402 F.3d 912 (9th Cir. 2005)—is that it has nothing at all to say about used vehicles one way or another. This interpretation is particularly preferable because accepting BMW's argument would render illusory all of the express warranties BMW issued to buyers of its certified pre-owned vehicles in Nevada.

Relatedly, because Nevada's Lemon Law only applies to new vehicles, BMW's statute of limitations argument also fails. Although Nev. Rev. Stat. § 597.650 provides that breach of warranty claims "must be commenced within 18 months after the date of the original delivery of the motor vehicle to the buyer," by its own terms, this limitations period applies only to "action[s] brought pursuant to [the Lemon Law]." Because Freas' warranty claims relate to a used vehicle, and are thus not brought pursuant to the Lemon Law, § 597.650 is inapplicable.

Rather, the correct statute of limitations is found in Nevada's Uniform Commercial Code, which states that: "An action for breach of any contract for sale must be commenced within 4 years after the cause of action has accrued." Nev. Rev. Stat. § 104.2725(1).[6] "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of

---

[6] Nevada's UCC statute of limitations is applicable, even though this action was commenced in California, because of Civil Code § 361. See Flowers v. Carville, 310 F.3d 1118, 1123 (9th Cir. 2002) (holding that federal courts applying state law must apply the forum state's borrowing statute in determining which state's statute of limitations governs). That section states that when "a cause of action has arisen in another State . . . and by the laws thereof an action thereon cannot there be maintained against a person by reason of the lapse of time, an action thereon shall not be maintained against him in [California], except in favor of one who has been a citizen of [California], and who has held the cause of action from the time it accrued." Cal. Civil Code § 361. Because Freas was a Nevada citizen at the time his cause of action accrued (the day BMW delivered the Vehicle to him, see Nev. Rev. Stat. § 104.2725(2)), Freas is not eligible for § 361's carve-out for California citizens. See McCann v. Foster Wheeler LLC, 48 Cal. 4th 68, 85 (2010) ("Past cases establish that [§ 361's] exception applies only where the plaintiff was a California citizen at the time the cause of action accrued, and does not extend to a plaintiff who became a citizen of California after the cause of action accrued but before the lawsuit in question was filed."). Freas' claims are thus subject to any applicable Nevada limitations periods.

11

knowledge of the breach." Id. § 104.2725(2). "A breach of warranty occurs when the tender of delivery is made . . . ." Id. Here, Freas purchased the vehicle on March 12, 2014, and commenced this lawsuit on August 1, 2017. Because this lawsuit was "commenced within 4 years after the cause of action . . . accrued," it is not time barred. Id. § 104.2725(1).

Accordingly, the Court denies BMW's motion for summary judgment as to Freas' Magnuson-Moss/breach of express warranty theory.

### D. Implied Warranty of Merchantability Theory

Freas also claims that BMW breached the implied warranty of merchantability created by Nevada's Uniform Commercial Code. See Nev. Rev. Stat. § 104.2314(1) ("[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."). Relevant here, Nevada law would consider the Vehicle merchantable if it: (i) could "[p]ass without objection in the trade under the contract description;" and (ii) was "fit for the ordinary purposes for which [vehicles] are used." Id. § 104.2314(2)(a), (c).[7]

BMW argues that it is entitled to summary judgment on Freas' implied warranty theory because: (i) Freas has allegedly presented no evidence that the Vehicle does not meet the standards for merchantability set by Nev. Rev. Stat. § 104.2314(2); and (ii) BMW allegedly fixed each individual problem raised during Freas' eleven servicing requests. (Doc. No. 33 at 15–17.) As Freas rightly rejoins however, BMW's arguments ring hollow and would require the Court to apply an overly rigid construction of the law.

At bottom, Freas' theory of the case is a simple one. He paid a substantial sum of money for a used luxury vehicle from a reputable dealer, and expected the vehicle to run as advertised. Instead, the Vehicle allegedly has serious engine problems that have not been resolved despite eleven service requests and more than sixty days in the shop. A reasonable trier of fact could find that the Vehicle was not merchantable when delivered,

---

[7] Although Nevada's UCC contains other requirements for goods to be merchantable, none of the others appear applicable to automobiles. Nev. Rev. Stat. § 104.2314(2)(b), (d)–(f).

and was not subsequently made merchantable by BMW's servicing attempts, based on Freas' testimony and the number of service requests involved. See Nev. Contract Servs., Inc. v. Squirrel Cos., Inc., 68 P.3d 896, 899–900 (Nev. 2003) (reversing grant of summary judgment in case where liquor dispenser suffered from unexplained malfunctions and holding "that it is too burdensome to require a plaintiff to prove precisely why a product does not work in a breach of warranty action, specifically in instances . . . where a product integrating electronic and mechanical components is involved" (footnote omitted)).

Havas v. Love, 514 P.2d 1187 (Nev. 1973) is instructive. There, the plaintiff bought a motor bus from the defendant. Id. at 1188. "On the day that [the plaintiff] was to accept delivery of the bus he noticed smoke coming from the air conditioning unit." Id. "After a wait of three or four hours during which the [defendant] attempted to repair the bus [the plaintiff] again observed smoke and fumes coming out of the motor and from underneath the hood of the vehicle." Id. The Nevada Supreme Court held that the plaintiff's lay observations were sufficient to support "a finding that the motor bus . . . was not fit for its intended use and failed to conform to the implied warranty of merchantability contained in the purchase agreement." Id. The same reasoning is equally applicable here—if the trier of fact believes Freas' representations about the Vehicle's defects, it could conclude that the Vehicle was not merchantable when delivered. See also Stover v. Findlay RV Ctr., Inc., No. 2:09–cv–01859–GMN–RJJ, 2010 WL 3328068, at *7 (D. Nev. Aug. 20, 2010) (declining to dismiss breach of warranty action over defective motor home where the plaintiffs alleged "numerous defects" that prevented them from using the motor home for lengthy periods).

Accordingly, the Court also denies BMW's motion for summary judgment as to Freas' Magnuson-Moss/breach of implied warranty theory.

///
///
///
///

## **Conclusion**

For the foregoing reasons, the Court concludes that: (i) Nevada law governs Freas' Magnuson-Moss claim; (ii) Freas did not violate Magnuson-Moss' informal dispute resolution requirement; (iii) Freas' express warranty theory is not barred by Nevada's Lemon Law, or the Lemon Law's statute of limitations; and (iv) genuine issues of material fact preclude summary judgment on Freas' implied warranty of merchantability theory. The Court accordingly denies BMW's motion for summary judgment.

**IT IS SO ORDERED.**

DATED: August 1, 2018

_____
MARILYN L. HUFF, District Judge
UNITED STATES DISTRICT COURT